Filed 2/13/26  Conservatorship of H.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| In re CONSERVATORSHIP OF H.M. | B347882 |
| PUBLIC GUARDIAN OF LOS ANGELES COUNTY,<br><br>    Petitioner and Respondent,<br><br>    v.<br><br>H.M.,<br><br>    Objector and Appellant. | (Los Angeles County Super. Ct. No. 24NWMH00667) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Harrison, Judge.  Reversed.

Rudy Kraft for Objector and Appellant.

Dawyn R. Harrison, County Counsel, Laura Quiñonez, Assistant County Counsel and William C. Sias, Principal Deputy County Counsel for Petitioner and Respondent.

————————————————

Following a court trial, the court found appellant H.M. gravely disabled under the Lanterman-Petris-Short Act (Welf & Inst. Code, § 5000 et seq.; LPS Act). The court appointed the Los Angeles County Public Guardian as H.M.'s conservator. On appeal, H.M. argues the trial court erred in failing to advise him of his right to a jury trial and failing to obtain a personal waiver of that right. Here, the only discussion of a jury trial before the court occurred between H.M. and his attorney while H.M was being assisted by an Arabic language interpreter when, in fact, H.M. needed an Armenian language interpreter. When the court trial later resumed, now with the assistance of an Armenian interpreter, at no time did the court advise H.M. of his right to a jury trial or obtain a waiver of that right. The record thus does not support that H.M. knowingly and voluntarily waived his right to a jury trial. We thus cannot conclude the failure to advise H.M. of his jury trial right in a language he understood was harmless. We reverse the conservatorship order.

## BACKGROUND

In November 2024, County Counsel filed a petition for appointment of a conservator over H.M. In support of the petition, a physician declared H.M. suffers from schizophrenia and was disorganized and delusional.

On January 8, 2025, H.M. was present in court with his attorney and an Arabic language interpreter. H.M.'s counsel asked him, "[W]ould you agree to be on a conservatorship?" and H.M. responded, "I don't want to." His attorney then stated: "You can have either a court trial with a judge or a jury trial. Do you know what type of trial you would like?" H.M. responded, "Judge." The court then stated: "[T]he court will waive the jury trial and we will set this matter for a court trial at your request."

At a subsequent hearing on April 16, 2025, the Arabic language interpreter explained to the court that H.M. needed an Armenian language interpreter. The interpreter said H.M. understood "a little bit of Arabic," but was "more comfortable" communicating "in Armenian." When the court said, "It's not really Arabic he's speaking," the interpreter responded, "Exactly." Counsel for the Public Guardian told the court H.M. "understands Arabic but speaks it very little" and requested an Armenian interpreter for H.M. Counsel for the Public Guardian explained Armenian was H.M.'s "primary language." The court continued the trial so that an Armenian interpreter could assist H.M. The court never obtained a waiver of jury from H.M. when he was being assisted by an Armenian interpreter.

The bench trial commenced on June 18, 2025 with an Armenian language interpreter. After trial, the court appointed the Los Angeles County Office of the Public Guardian conservator over H.M.

## DISCUSSION

H.M. argues we must reverse the conservatorship order because the trial court failed to advise H.M. of his right to a jury trial and the error was not harmless. "We review any statutory claims de novo." (*Conservatorship of B.K.* (Jan. 28, 2026, B343506) ___ Cal.App.5th ___ [2026 Cal.App.LEXIS 40, at p. *7].)[1]

---

[1] Because we reverse based on the failure to obtain a knowing and voluntary waiver of his jury trial right, we do not consider H.M.'s other arguments. These arguments are the record lacks substantial evidence he was gravely disabled and the

3

The LPS Act authorizes one-year conservatorships over individuals who are "gravely disabled" by a mental health disorder or chronic alcoholism. Persons subject to the LPS Act are entitled to a court or jury trial on whether they are gravely disabled, and the trial court must personally advise them of this right. (Welf & Inst. Code, § 5350;[2] Prob. Code, § 1828, subd. (a)(6).) Probate Code section 1828, incorporated by reference into Welfare and Institutes Code section 5350, provides "before the establishment of a conservatorship of the person or estate, or both, the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury." (Prob. Code, § 1828, subd. (a)(6).)

Both parties rely on *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894 (*Conservatorship of C.O.*) In that case, the appellate court affirmed the trial court's finding that the conservatee[3] was gravely disabled. The court's written citation for conservatorship recited that the conservatee had a right to a jury trial on the issue of grave disability and that the conservatee

---

trial court failed to consider appointing a family member as his conservator.

[2] Undesignated statutory citations are to the Welfare and Institutions Code. Section 5350, subdivision (d)(1) provides in part: "The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether the person is gravely disabled."

[3] The proceeding at issue was a petition for reappointment of a conservator, which required a finding that the conservatee was gravely disabled. (*Conservatorship of C.O., supra,* 71 Cal.App.5th at p. 901.)

4

had to request a jury trial within five days before the hearing. The conservatee did not request a jury trial. (*Conservatorship of C.O.*, at p. 901.) At the hearing, the trial court never advised the proposed conservatee of his right to a jury trial or elicited his waiver on the record even though the proposed conservatee was present. (*Id*. at p. 902.) Instead, the court relied on counsel's representation that his client was requesting a court trial. At no time during the proceedings did the conservatee object to the court conducting the trial.

The conservatee argued on appeal that the court had violated his statutory rights and constitutional rights of due process and equal protection of law by not advising him on the record of his jury trial right and not obtaining a personal waiver of that right. (*Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at p. 902.) The appellate court agreed that the trial court's failure personally to advise the conservatee of his jury trial right violated Probate Code, section 1828, subdivision (a)(6). (*Conservatorship of C.O.*, at p. 909 [where a proposed conservatee "is able to and willing to attend the hearing [citation], the trial court must directly advise a proposed conservatee of his or her right to a jury trial over the matter of the establishment or reestablishment of the conservatorship"].)

The court, however, rejected the conservatee's argument that the failure to obtain a personal waiver from him was statutory error: "We hold that (absent circumstances suggesting the proposed conservatee's counsel lacked actual authority, counsel disregarded his client's wishes, or that the proposed conservatee was actually unaware of his right to a trial by jury) counsel may waive on behalf of the proposed conservatee his or her right to have the matter of establishment or reestablishment

5

of the conservatorship decided by jury trial." (*Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at p. 911.)[4]

The appellate court then turned to whether the trial court's failure to advise the conservatee personally of his right to a jury trial was structural error or whether to obtain a reversal, the conservatee had to show prejudice from the failure to advise him personally of his right to a jury trial. The appellate court held the error was not structural. It further held the conservatee had failed to show prejudice given the record affirmatively showed his waiver of his right to a jury trial was knowing and voluntary (*Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at pp. 918–919), and the evidence supported that "it is not reasonably probable that an outcome more favorable to C.O. would have resulted had the trial court personally advised him of his jury trial right" (*id.* at p. 919).[5]

---

[4] The court also rejected the conservatee's argument that due process and the guarantee of equal protection of law required the trial court to obtain a personal waiver on the record of his right to a jury trial. (*Conservatorship of C.O., supra,* 71 Cal.App.5th at pp. 916, 917.)

[5] *K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 144 distinguished *Conservatorship of C.O.* where the (1) conservatee was never given the opportunity to demand a trial or advised of her jury trial right on the issue of grave disability; and (2) the conservatee's mere participation in what the conservatee and her counsel presumed was a hearing, but the trial court thought was a trial, did not constitute a knowing and voluntary waiver of the conservatee's jury trial right. As the appellate court explained: "Here, however, the record contains no indication that K.R.'s counsel purported to waive K.R.'s jury trial right or that the trial court acted to accept any such waiver. Instead, it appears that

More recently, Division Four of this District followed *Conservatorship of C.O.* in concluding substantial evidence supported the trial court's implicit finding that the conservatee knowingly and voluntarily waived her right to a jury trial at the reappointment hearing and that any error in advising the conservatee was harmless. (*Conservatorship of B.K.*, *supra*, ___ Cal.App.5th at pp. ___ [[2026 Cal.App.LEXIS 40, at pp. *15–*16].) There, in prior hearings, the conservatee told the trial court she wanted a jury trial because she wanted to " 'get off conservatorship.' " (*Id*. at p. *4.) On the day of trial, the conservatee was present in court with counsel. The court indicated it had not " 'as of yet' " seen a waiver. (*Id*. at p. *5.) Counsel told the court his client wanted a trial that day and if so, the trial would have to be a court trial. The court then confirmed this was the conservatee's wish, and said, " 'So that means you are waiving and giving up your right to have a jury trial to have a court trial today with me; is that right?' " (*Id*. at pp. *5–*6.) The conservatee responded in the affirmative to which her counsel joined. (*Id*. at p. *6.) The conservatee then participated in the ensuing trial "without objection" and the appellate court concluded there was no evidence that counsel lacked authority or otherwise "disregarded [the conservatee's] wishes." (*Id*. at p. *11.) Finally, the court concluded even if arguably "an additional advisement was required before the court accepted [the conservatee's] waiver, any such error was harmless" because

_____

both K.R. and her counsel proceeded reasonably in assuming the March 2 proceeding was simply the statutorily authorized hearing on the conservatorship petition. At bottom, the record in this case lacks the requisite facts to warrant a finding of harmless error under *C.O.*" (*Ibid*.)

7

the court's finding that the conservatee was gravely disabled was supported by the evidence and there was no suggestion that the outcome would have been different if the trial had been before a jury. (*Id.* at pp. \*15–\*16.)

The same cannot be said here. H.M.'s counsel did not waive H.M.'s right to a jury on his behalf. H.M.'s counsel made no representation to the court H.M. was aware of his right to a jury trial and wanted to waive that right. Although H.M. responded "[j]udge" when his counsel asked if he preferred a jury trial or a court trial, that response occurred when H.M. was being assisted by an Arabic language interpreter when H.M. needed an Armenian language interpreter. H.M.'s one-word statement "[j]udge" cannot be characterized as a knowing and voluntary waiver of his statutory right to a jury trial. Indeed, after the Public Guardian admitted H.M. needed an Armenian language interpreter, the trial court postponed trial to obtain an Armenian interpreter. Even after H.M. had the assistance of an Armenian interpreter, neither the court nor H.M.'s counsel informed H.M. of his right to a jury trial or asked whether he was waiving that right. We therefore reject respondent's contention that the totality of the circumstances shows H.M.'s waiver of a jury trial was knowing and voluntary.

Respondent also argues that "[t]here is substantial evidence of H.M.'s disorganized thoughts" thus supporting an "implied finding" by the trial court "to proceed . . . with the court trial under the circumstances." The trial court did *not* rely (either expressly or impliedly) on "disorganized thoughts" when it determined H.M. waived a jury trial. Instead, the court expressly found it would waive jury trial at H.M.'s "request."

8

In sum, the record does not show anyone informed H.M. of his right to a jury trial in a language he understood.  For the same reason, we cannot conclude H.M. knowingly and voluntarily waived his right to a jury trial.  Absent such a conclusion, we also cannot conclude the court's failure to advise H.M. of his jury trial right in a language H.M. understood was harmless.

## DISPOSITION

The conservatorship order is reversed.  The case is remanded for a new trial.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.